**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| VALERIIA PAK, | |
| Petitioner, | CIVIL ACTION NO. 3:26-CV-00379 |
| v. | (MEHALCHICK, J.) |
| ANGELA HOOVER, et al., | |
| Respondents. | |

**MEMORANDUM**

Petitioner, Valeriia Pak ("Pak"), a Russian citizen seeking asylum, brings this petition for writ of habeas corpus. (Doc. 1). On February 16, 2026, Pak filed the instant petition, requesting that Respondents Michael T. Rose and Angela Hoover ("Hoover")[1] release her from custody at the Clinton County Correctional Facility in McElhatten, Pennsylvania. (Doc. 1, at 4). Hoover filed a response to Pak's petition on February 25, 2026 (Doc. 5), and Pak filed a traverse on March 2, 2026. (Doc. 7). For the following reasons, Pak's petition (Doc. 1) is

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Angela Hoover ("Hoover"), Warden of the Clinton County Correctional Facility. (Doc. 1, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Pak is detained at the Clinton County Correctional Facility, Hoover is the proper respondent. (Doc. 1, at 3); *see Rumsfeld*, 542 U.S. at 434. As such, Respondent Michael T. Rose is **DISMISSED**. However, the government will be bound by the Court's judgment because Hoover is acting as an agent of the federal government by detaining Pak on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

**GRANTED,** and Hoover is **ORDERED** to release Pak from custody.

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Pak's petition, Hoover's response, and the exhibits thereto. (Doc. 1; Doc. 5). Pak is a citizen of Russia, who has lived in the United States for over two years. (Doc. 1, at 2). Pak entered the United States on or about January 14, 2024, without inspection or parole. (Doc. 1, at 2). Pak subsequently encountered Customs and Border Patrol ("CBP"), who detained Pak until releasing her on her own recognizance on January 16, 2024. (Doc. 1, at 2). Since entering the United States, Pak has lived with relatives in Philadelphia while attending community college and complying with the conditions of her release. (Doc. 1, at 3). Pak has no criminal history, and on January 31, 2024, Pak applied for asylum and for withholding of removal. (Doc. 5, at 4, 15).

On November 26, 2025, ICE arrested Pak during a routine check-in appointment at the Philadelphia ICE Field Office pursuant to an I-200 warrant for arrest of an alien. (Doc. 1, at 2; Doc. 5-3, at 6). ICE charged Pak with being inadmissible as someone who entered the United States without inspection. (Doc. 1, at 15). ICE ultimately transferred Pak to the Clinton County Correctional Facility, where she remains detained. (Doc. 1, at 15). On January 21, 2026, Immigration Judge Leo Finston denied Pak's asylum claim and issued Pak an order of removal to Russia but granted withholding of removal. (Doc. 5, at 4-5). On January 27, 2026, Pak timely appealed the denial of her asylum claim and order of removal to the Board of Immigration Appeals ("BIA"). (Doc. 5, at 5). Pak asserts fear of persecution in Russia because of her LGBTQ identity, ethnicity, and political opinions. (Doc. 7, at 3).

## II.    LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing or release if the Court determines that a noncitizen habeas petitioner is entitled to such relief under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections); *see also Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *8 (E.D. Pa. Nov. 14, 2025) (finding that the appropriate remedy when the government detains a petitioner under an inapplicable statute, violating due process, is release from custody).

III.    JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act ("INA") strips district courts of subject-matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later on a PFR. *Kahlil*, 164 F.4th at 273-74.

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Pak*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond

requests for noncitizens detained under § 1225(b)); *see Kashranov*, 2025 WL 3188399 at *5 (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them"). Thus, the Court retains jurisdiction over the legal questions of whether § 1225(b) or § 1226(a) applies to Pak and whether Pak is entitled to a bond hearing because they are wholly collateral to her removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79; *Zadvydas*, 533 U.S. at 688.

## IV.    DISCUSSION

Pak contends that her mandatory detention under § 1225(b)(2)(A) is a violation of the INA and the Due Process Clause of the Fifth Amendment.[2] (Doc. 1, at 18, 19-20). Hoover counters that Pak is subject to mandatory detention because she falls squarely under § 1225(b)(2)(A), which Congressionally mandates the detention of noncitizens like Pak, who are present in the United States without having been lawfully admitted. (Doc. 5, at 10-12). The Court will first address whether Hoover properly detained Pak under § 1225(b)(2)(A). The Court will then address whether Pak's detention violates due process.

---

[2] The Court notes that Pak also claims relief based on the INA's bond regulations. (Doc. 1, at 18-19). As the Court grants the Petition on the basis that Pak's detention violates the INA and due process, the Court declines to consider Pak's bond regulation arguments at this time. *See Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *9 n. 6 (D.N.J. Oct. 22, 2025); *see Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *5 (E.D. Pa. Nov. 18, 2025); *see Kashranov*, 2025 WL 3188399, at *8; *see also Ramirez v. Jamison*, No. 2:25-cv-7346, 2026 WL 196474, at *19 (E.D. Pa. Jan. 26, 2026).

A.    HOOVER IMPROPERLY DETAINED PAK UNDER 8 U.S.C. 1225(B).

Hoover's detention of Pak under 8 U.S.C. § 1225(b) is improper and denies Pak of the opportunity for a bond determination. Pak avers that noncitizens residing in the United States who are subject to grounds of inadmissibility are not "seeking admission" and are not subject to detention under § 1225(b)(2)(A). (Doc. 1, at 3). Hoover counters that Pak is properly detained under § 1225(b)(1) because CPB apprehended Pak within miles of a port of entry only days after she crossed border. (Doc. 5, at 1-2). In the alternative, Hoover contends that Pak meets the definition of an applicant for admission who is present in the United States without admission and thus is properly detained under § 1225(b)(2)(A).[3] (Doc. 5, at 10-12).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in part, to end the preferential treatment of noncitizens who evaded inspection when entering

---

[3] While Immigration Judge Leo Finston issued Pak an order of removal on January 21, 2026, Pak's appeal of that order to the BIA is still pending, so the order of removal is not administratively final. (Doc. 5-5); 8 U.S.C. § 1231(a)(1)(B)(i) ("The removal period begins on the latest of the following: the date of the order of removal becomes administratively final . . ."); 8 C.F.R. § 1241.1(a) ("An order of removal made by an immigration judge . . . shall become final upon: dismissal of an appeal by the Board of Immigration Appeals."). Pak remains subjects to mandatory detention under § 1225(b) during the pendency of her removal proceedings.

the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to section 1225(b)(1) of the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, the Department of Homeland Security may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Despite having no supporting documents, Hoover avers that Pak is subject to mandatory detention and expedited removal under § 1225(b)(1) because CBP encountered Pak within miles of a port of entry only a few days after she entered the United States. (Doc. 5, at 1-2).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) of the INA provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission

is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov*, 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Soto*, 2025 WL 2976572, at *5 (collecting cases). The parties dispute whether Pak is still "seeking admission" to the United States. (Doc. 1, at 11-12; Doc. 5, at 13-20).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings*, 583 U.S. at 286. The phrase "alien seeking admission" is not defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL 2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*,

8

No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[4] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

---

[4] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited March 4, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Pak*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at *7 (collecting cases).

Section 1226(a), not § 1225(b)(1) or § 1225(b)(2)(A), applies to Pak's detention. While Hoover avers that Pak is subject to detention under § 1225(b)(1) because CBP apprehended Pak within miles of a port of entry, a few days after she entered the United States, he concedes

that there is no evidence supporting a conclusion that Pak is subject to expedited removal proceedings. (Doc. 5, at 1-2). Hoover submitted no evidence that Pak was referred for a credible fear interview at the border or was paroled into the United States in accordance with the procedures provided by § 1225(b)(1) and § 1182(d)(5). CPB instead released Pak into the United States on her own recognizance with requirements to attend periodic ICE check-in appointments, which she complied with. (Doc. 1, at 20; Doc. 5, at 4). With no support that Pak is subject to expedited removal or parole in the United States, Pak does not meet the definition of an "arriving alien" under § 1225(b)(1).

Pak also does not fall under the meaning of an "alien seeking admission" under § 1225(b)(2)(A). Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez*, 792 F. Supp. 3d at 214, *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto*, 2025 WL 2976572, at *5 (collecting cases). Pak has lived and worked in the United States for over two years. (Doc. 1, at 15). Pak has community ties in Philadelphia, where her family lives and where she attends community college. (Doc. 1, at 3, 15). Pak is not actively attempting to come into the United States; based on the plain meaning of the phrase "seeking admission," Pak sought admission when she entered the United States on January 14, 2024. (Doc. 1, at 8-9); *see Kashranov*, 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct—physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). A noncitizen, like Pak, who has established herself in the United States, making connections since her entry, is no longer at the "threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025).

11

Section 1226(a) applies to applicants for admission, like Pak, who are not actively seeking admission but who have been residing in the United States for an extended period. *Cantu-Cortes*, 2025 WL 3171639, at *2 (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petitioner who lived in the United States for almost two years was not seeking admission but "already here"). Pak was also arrested and detained pursuant to a warrant in accordance with the procedures of § 1226(a). (Doc. 5-3, at 6); *compare* 8 U.S.C. § 1226 ("On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."), *with* 8 U.S.C. § 1225 (containing no provisions on apprehending noncitizens via warrant). Accordingly, after her November 26 arrest, Hoover improperly detained Pak under § 1225(b), when she should have detained her under § 1226(a).

B.    HOOVER'S DETENTION OF PAK UNDER 8 U.S.C. § 1225(B) VIOLATES PAK'S PROCEDURAL DUE PROCESS RIGHTS.

Hoover's misapplication of § 1225(b) to Pak, violates Pak's procedural due process rights because it denies her of an opportunity for bond determination. Pak contends that her prolonged detention without opportunity for bond violates the Due Process Clause of the Fifth Amendment. (Doc. 1, at 19-20). Hoover counters that as an immigrant detainee, Pak is only entitled to the process provided by Congress in § 1225. (Doc. 5, at 30-34).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,*

12

533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures. *Mathews*, 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Pak's favor because Hoover deprived Pak of her physical liberty through improper detention without the possibility of bond under § 1225(b). *Hamdi v. Rumsfield*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto*, 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Pak's favor because Hoover erroneously detained Pak without the possibility of release on bond pursuant to § 1225(b). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weighs in Pak's favor. Generally, the government's interest in detaining noncitizens is to

ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at \*8. Here, Pak poses no such risk to the government's interest in detaining her because she is not a flight risk or danger to the community. Pak has no criminal record, and Pak has demonstrated compliance with the immigration process by attending all ICE check-in appointments and otherwise complying with the conditions of her release. (Doc. 1, at 20). As each *Mathews* factor weighs in Pak's favor, her mandatory detention under § 1225(b) violates her procedural due process rights. Accordingly, Pak's petition for writ of habeas corpus is **GRANTED**, and Hoover is **ORDERED** to release Pak from custody.[5]

## V.   CONCLUSION

For the foregoing reasons, Pak's petition for writ of habeas corpus is **GRANTED**. (Doc. 1). Hoover is **ORDERED** to release Pak from custody and to return Pak's personal belongings and identification documents to her. Hoover is also permanently enjoined from re-detaining Pak under § 1225(b). Pak may move to reopen this matter if Hoover seeks to detain her under § 1226(a) and fails to schedule a timely bond hearing. The Clerk of Court is directed to close this matter.

---

[5] The Court notes that Pak also seeks relief in the form of attorney's fees and costs. (Doc. 1, at 21). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at \*2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Pak must request attorney's fees in a separate motion with accompanying exhibits.

An appropriate Order follows.

**BY THE COURT:**

**Dated: March 5, 2026**                                    */s/ Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **United States District Judge**